# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| ADEBOYE ARAWOLE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 23-2413 (RBW) |
| | ) | |
| MASTER SECURITY COMPANY, LLC, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## MEMORANDUM OPINION

The plaintiff—Adeboye Arawole—proceeding pro se, originally filed this civil suit in the Superior Court of the District of Columbia against the defendant, Master Security Company, LLC, alleging that his employment was wrongfully terminated by the defendant on July 28, 2020, and the defendant removed the suit to this Court.[1] See Notice of Removal, Exhibit ("Ex.") 1 (District of Columbia Superior Court Complaint ("Superior Ct. Compl.")) at 7, ECF No. 1-1. Subsequently, on April 1, 2024, the plaintiff filed his Amended Complaint. See Plaintiff's Amended Complaint ("Am. Compl.") at 1, ECF No. 20. Currently pending before the Court is the defendant's motion to dismiss the Amended Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. See Defendant's Memorandum of Points and Authorities in Support of Motion to Dismiss Amended Complaint ("Def.'s Mot.") at 1, ECF No. 21. Upon

---

[1] The basis for removal of this case from the Superior Court of the District of Columbia to the United States District Court for the District of Columbia, pursuant to 28 U.S.C. § 1441 et seq., was that the parties have diversity of citizenship under 28 U.S.C. ¶ 1332(a). See Notice of Removal at 1–2, ECF No. 1. The removal was appropriate because "neither [the p]laintiff nor [the defendant] are citizens of the same state and the amount in controversy exceeds seventy-five thousand dollars ($75,000)." Id. at 2.

careful consideration of the parties' submissions,[2] the Court concludes for the following reasons that it must grant the defendant's motion to dismiss.

## I.    BACKGROUND

### A.    Factual Background

The plaintiff—a former employee of the defendant, Master Security Company, which "provides security services and personnel to guard federal government facilities, pursuant to contracts with the Federal Protective Service," Notice of Removal ¶ 1—claims that his employment was wrongfully terminated by the defendant on July 28, 2020, for "report[ing] violations of rules and regulations and potential danger to the public safety on a federal contract to [his] supervisors[,]" Am. Compl. at 2.  Specifically, the plaintiff represents the following facts in his Amended Complaint: (1) "[a] Protective Security Officer (P.S.O[.]) was observed [by the plaintiff] with his duty weapon on the street, a violation of the Department of Homeland Security[,] Federal Protective Service[,] rules and regulations," id.; (2) "[the p]laintiff reported and documented [the] potential danger to public safety during the George Floyd riots in Washington[,] D[.C.,] [namely, that the p]laintiff observed a co-worker armed with [an] assigned weapon driving off the premises and later returning approximately thirty minutes later[,]" id. at 3; and (3) that "[u]pon returning to work, [the p]laintiff observed the co-worker on the street with his assigned weapon whil[e] a pedestrian was casually walking by the firearm side[ of the

---

[2] In addition to the filings already identified, the Court considered the following submissions in rendering its decision: (1) the defendant's Notice of Designation of Related Civil Cases Pending in This or Any Other United States Court ("Notice of Related Case"), ECF No. 3; (2) the Defendant's Motion to Dismiss Complaint ("Def.'s 1st Mot."), ECF No. 5; (3) the Plaintiff's Response to Defendant's Motion to Dismiss Complaint ("Pl.'s 1st Resp."), ECF No. 7; (4) Defendant Master Security Company, LLC's Reply to Plaintiff's Response to Motion to Dismiss Complaint ("Def.'s 1st Resp."), ECF No. 8; (5) the Defendant's Supplemental Brief in Support of Motion to Dismiss ("Def.'s Suppl. Br."), ECF No. 17; (6) the Plaintiff's Supplemental Brief in Opposition to Defendant's Motion to Dismiss Complaint ("Pl.'s Suppl. Br."), ECF No. 18; (7) the Plaintiff's Memorandum of Points and Authorities in Support of Response to Deny Defendant's Motion to Dismiss Complaint (Pl.'s Opp'n"), ECF No. 22; and (8) the Defendant's Reply to Plaintiff's Opposition to Motion to Dismiss Amended Complaint ("Def.'s Reply"), ECF No. 23.

officer's body,]" id.  The plaintiff represents that the "co-worker was in violation of the rules and regulations of the Federal Protective Service[,] Department of Homeland Security[,] by being armed with assigned weapons on public street[s] and traveling with the weapon to move his personal vehicle from one city block to another."  Id. at 4.  In sum, "[t]he aforementioned activities of the co[-]worker [are] what [the p]laintiff describe[s] as 'taking the weapon beyond the scope of its intended jurisdiction[,]'" and the plaintiff alleges that he was wrongfully terminated as reprisal for reporting those activities to his superiors.  Id. at 3.

Moreover, the plaintiff represents that, following his termination by the defendant, his "suitability for further employment was denied by [the Department of] Homeland Security due to [his] termination by [the d]efendant.  The letter from [the Department of] Homeland Security effectively prevented the plaintiff from employment that was secured after the [alleged] wrongful termination."  Pl.'s Opp'n at 6.

## B.    Procedural Background

The plaintiff, proceeding pro se, originally filed this civil suit against the defendant in the Superior Court of the District of Columbia, alleging that he was wrongfully terminated by the defendant.  See Notice of Removal at 1–2.  On August 18, 2023, the defendant removed the case from the Superior Court to this Court.  See id. at 1.

On August 23, 2023, the defendant filed its motion to dismiss the plaintiff's Complaint in this case, i.e., Civil Action No. 23-2413, pursuant to Rule 12(b)(6).[3]  See Def.'s 1st Mot. at 1.

---

[3] Because this lawsuit "is not the first lawsuit filed by [the p]laintiff against the [defendant] claiming that he was unlawfully discharged for the activity he describes in his Complaint[,]" Def.'s 1st Mot. at 2, n.1, the defendant designated this case as a related case, see Notice of Related Case at 1, and "request[ed] that the Court take judicial notice of the case record" in Arawole v. Master Security Company, LLC, Case No. 21-cv-2675 ("Case No. 21-cv-2675"), Def.'s 1st Mot. at 2, n.1.  In Case No. 21-cv-2675, the plaintiff also alleged that he was discharged by the defendant for engaging in whistleblower activities, in violation of 41 U.S.C. § 4712.  See Amended Complaint ¶¶ 1, 3, Case No. 21-cv-2675, ECF No. 1-1.  Accordingly, on September 16, 2022, the Court granted the defendant's motion to dismiss the Complaint in the earlier filed case and dismissed that case in light of the plaintiff's

(continued . . .)

On March 27, 2024, the Court permitted the plaintiff to file an amended complaint and denied without prejudice the defendant's pending motion to dismiss.  <u>See</u> Order at 1 (Mar. 27, 2024), ECF No. 19.

Subsequently, on April 1, 2024, the plaintiff filed his Amended Complaint, <u>see</u> Am. Compl. at 1, and on April 10, 2024, the defendant filed its motion to dismiss the Amended Complaint, <u>see</u> Def.'s Mot. at 1.  The plaintiff filed his opposition on April 25, 2024, <u>see</u> Pl.'s Opp'n at 1, and the defendant filed its reply in support of its motion on May 1, 2024, <u>see</u> Def.'s Reply at 1.

On May 20, 2024, the Court held a hearing on the defendant's motion to dismiss.  <u>See</u> Minute ("Min.") Entry (May 20, 2024).  Ultimately, the Court concluded that Section 4.3.2 of the Federal Protective Service Statement of Work contradicts the plaintiff's claims about off-duty possession of a weapon, and the Court notified the parties that it would subsequently issue this written decision resolving the defendant's motion to dismiss the Amended Complaint.  <u>See</u> <u>id.</u>

## II.   STANDARD OF REVIEW

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests whether a complaint has properly "state[d] a claim upon which relief can be granted[.]"  Fed. R. Civ. P. 12(b)(6).  "To survive a motion to dismiss [under Rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (quoting <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007)).  A claim is facially plausible "when the plaintiff pleads factual content that allows

---

(. . . continued)
failure to exhaust his available administrative remedies.  <u>See</u> Order at 1 (Sept. 16, 2022), Case No. 21-cv-2675, ECF No. 22.

the court to draw [a] reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556).

In evaluating a motion to dismiss under Rule 12(b)(6), "the Court must construe the complaint in favor of the plaintiff, who must be granted the benefit of all inferences that can be derived from the facts alleged." Hettinga v. United States, 677 F.3d 471, 476 (D.C. Cir. 2012) (internal quotation marks omitted) (quoting Schuler v. United States, 617 F.2d 605, 608 (D.C. Cir. 1979)).  While the Court must "assume [the] veracity" of any "well-pleaded factual allegations" in a complaint, conclusory allegations "are not entitled to the assumption of truth." Iqbal, 556 U.S. at 679.  Thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. at 678 (citing Twombly, 550 U.S. at 555).  Also, the Court need not "accept legal conclusions cast as factual allegations[,]" or "inferences drawn by [the] plaintiff if those inferences are not supported by the facts set out in the complaint[.]" Hettinga, 677 F.3d at 476.  The Court "may consider only the facts alleged in the complaint, any documents either attached to or incorporated in the complaint[,] and matters of which [the Court] may take judicial notice." Equal Emp. Opportunity Comm'n v. St. Francis Xavier Parochial Sch., 117 F.3d 621, 624 (D.C. Cir. 1997).

In applying the above analytical framework, the Court is mindful of the fact that the plaintiff in this matter is proceeding pro se.  The pleadings of pro se parties are "to be liberally construed, [and] a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." Erickson v. Pardus, 551 U.S. 89, 94 (2007) (internal quotation marks and citations omitted).  Furthermore, all factual allegations by a pro se litigant, whether contained in the complaint or other filings in the matter, should be read together in considering whether to grant a dispositive motion.  See Richardson v. United

5

States, 193 F.3d 545, 548 (D.C. Cir. 1999) ("[H]ere we similarly find that the District Court

should have read all of [the pro se plaintiff's] filings together before dismissing this case for lack

of subject matter jurisdiction."); Brown v. Whole Foods Mkt. Grp., Inc., 789 F.3d 146, 152 (D.C.

Cir. 2015) (concluding the same in the context of a motion to dismiss pursuant to Rule 12(b)(6)).

Nonetheless, "[a] pro se plaintiff[] must still adequately plead [his] complaint consistent with the

edicts of Iqbal and Twombly." Yellen v. U.S. Bank, Nat'l Ass'n, 301 F. Supp. 3d 43, 47 (D.D.C.

2018) (citing Atherton v. D.C. Off. of Mayor, 567 F.3d 672, 682 (D.C. Cir. 2009)).

### III.    ANALYSIS

In his Amended Complaint,[4] the plaintiff argues that he "has established a cause of

wrongful termination based on 41 U[.]S[.]C[.] [§] 4712 [and the] rules and regulations of the

Federal Protective [ ] Service[,] Department of Homeland [ ] [S]ecurity[,]" also known as the

"SMART Book[.]"  Am. Compl. at 7; see also id. at 1, 3–4.  The plaintiff also appears to rely on

D.C. Code § 22-4504.02, which governs the Lawful Transportation of Firearms, in support of his

argument that the defendant violated the public policy of the District of Columbia.  See id. at 5.

In its motion to dismiss, the defendant argues that "the [plaintiff's] Amended Complaint must be

dismissed under [Federal Rule of Civil Procedure] 12(b)(6)" because the "[p]laintiff has failed to

state a cause of action under District of Columbia law for wrongful discharge in violation of

public policy or for a violation of 41 U.S.C. §[ ]4712."  Def.'s Mot. at 10.

In response, the plaintiff argues that "41 [U.S.C.] [§] 4712 [is] the applicable statute

sufficient to withstand [the d]efendant's motion to dismiss[.]"  Pl.'s Opp'n at 5.  This statute, the

plaintiff argues, "correlates with the public policy exceptions of the District of Columbia."

Id. at 4.  The plaintiff further asserts that his position "is supported with irrefutable

---

[4] In his Amended Complaint, the plaintiff asserts several of the same allegations that he made in his original
Complaint and his associated supplemental briefing.  See, e.g., Notice of Removal at 7–8.

documentation of activity protected by public policy in the District of Columbia prohibiting reprisal." Id. at 11.  The plaintiff contends that "41 U[.]S[.]C[.] [§] 4712 [p]rohibits reprisal on a federal contract when employees disclose certain information to qualified personnel [that] the employee reasonably believes is substantial and specific danger to public safety or violations of law[,] or rules[,] or regulations on [a] federal contract." Id.  Since the plaintiff claims to have "reasonably believe[d] that a co-worker violated the rules and regulations on a federal contract[,]" and he reported the alleged violation to "qualified personnel," id., the plaintiff argues that he was wrongfully terminated for making such a report, see id. at 10.

In reply, the defendant argues that the plaintiff still "fails to cite any legal authority supporting his contention that this federal statute could serve as the basis for a public policy of the District of Columbia[,]" and "it is well established that a statute which provides its own remedial scheme[—]as does 41 U.S.C[.] § 4712[—]cannot serve as a basis for the tort of wrongful discharge in violation of public policy in the District of Columbia." Def.'s Reply at 2 (citing Kassem v. Wash. Hosp. Ctr., 513 F.3d 251 (D.C. Cir. 2008)).  The defendant further notes that the "[p]laintiff's opposition also makes reference to provisions of the Federal Protective [S]ervice Statement of Work[; h]owever . . . [the p]laintiff makes no argument as to how such provisions, none of which is a D.C. law, ordinance[,] or regulation, can serve as the basis for a public policy of the District of Columbia protecting safety whistleblowers." Id.

**A.      Whether the Plaintiff Has Stated a Claim for Wrongful Discharge in Violation of District of Columbia Public Policy**

"It has long been settled in the District of Columbia that an employer may discharge an at-will employee[5] at any time and for any reason, or for no reason at all." Adams v. George W. Cochran & Co., 597 A.2d 28, 30 (D.C. 1991).  "In Adams, however, the District of Columbia Court of Appeals recognized a 'very narrow' public policy exception to the at-will employment doctrine: 'a discharged at-will employee[6] may sue his . . . former employer for a wrongful discharge when the sole reason for the discharge is the employee's refusal to violate the law[.]'" Kassem, 513 F.3d at 254 (quoting Adams, 597 A.2d at 34).  Subsequently, in Carl v. Children's Hospital, 702 A.2d 159 (D.C. 1997) (per curiam), the District of Columbia Court of Appeals held that it is possible to recognize additional public policy exceptions to the at-will doctrine and therefore expanded the public policy exception to include "circumstances other than an employee's outright refusal to violate a law . . . if 'solidly based on a statute or regulation that reflects the particular public policy to be applied.'" Liberatore v. Melville Corp., 168 F.3d 1326, 1331 (D.C. Cir. 1999) (Terry, J., concurring[7]) (quoting Carl, 702 A.2d at 163).

> Since Carl, courts have painted a somewhat confusing picture of what kind of public policy is sufficient, but cases with viable public polic[ies] have fallen into two categories: where an employee is terminated (1) for engaging in an activity when the employee points to a law that reflects a policy prohibiting retaliation against an individual for engaging in the type of activity the employee was

---

[5] The defendant, in its motion to dismiss, takes the position that the plaintiff was an at-will employee, and the plaintiff does not take opposition to the defendant's position.  See Def.'s Mot. at 3 ("Contrary to [the p]laintiff, nothing cited in the Amended Complaint establishes a public policy exception to his at-will employment and, thus, the Amended Complaint fails to state a cause of action [for] wrongful discharge under District of Columbia law.").

[6] "The District of Columbia Court of Appeals [later] held that the tort of wrongful discharge in violation of public policy is available for both at-will employees and contractual employees."  Carson v. Sim, 778 F. Supp. 2d 85, 97 n.4 (D.D.C. 2011) (citing Byrd v. VOCA Corp., 962 A.2d 927, 934 (D.C. 2008)).

[7] "Relying on Carl v. Children's Hospital, courts have treated Judge Terry's concurring opinion as the relevant standard."  Vreven v. Am. Ass'n of Retired Persons, 604 F. Supp. 2d 9, 14 n.5 (D.D.C. 2009).

8

engaged in[;] and (2) for reporting illegal conduct when the employee points to specific laws or regulations that clearly reflect a policy prohibiting the activity about which the employee complained, whether or not the employer actually violated the law or regulation.

Sichani v. Wash. Metro. Area Transit Auth., No. 22-cv-1584 (CRC), 2023 WL 7279254, at *6 (D.D.C. Nov. 3, 2023) (internal quotation marks omitted).

"Whether a discharge violates public policy is determined on a case-by-case basis, guided by the concept that a wrongful termination cause of action must be 'firmly anchored in either the Constitution or in a statute or regulation which clearly reflects the particular public policy being relied upon.'" Bowie v. Gonzales, 433 F. Supp. 2d 24, 30 (D.D.C. 2006) (quoting Warren v. Coastal Int'l Sec., Inc., 96 F. App'x 722, 722–23 (D.C. Cir. 2004)). Additionally, "there must be a close fit between the policy [ ] declared and the conduct at issue in the allegedly wrongful termination." Warren, 96 F. App'x at 723 (internal quotation marks omitted).

### 1. Whether the Plaintiff Has Adequately Pleaded a Wrongful Termination Claim Based on 41 U.S.C. § 4712

The plaintiff first argues that he "has established a cause of wrongful termination based on 41 U[.]S[.]C[.] [§] 4712[.]" Am. Compl. at 7. In its motion to dismiss, the defendant argues that "th[is] federal law protecting whistleblowing activity by employees of federal government contractors cannot serve as a basis for a District of Columbia public policy protecting [the] [p]laintiff's activity" and that, "[e]ven assuming that this [f]ederal [s]tatute directly applies to [the p]laintiff's termination, the statute provides its own remedial scheme to address retaliation for whistleblowing as to dangers to public safety[.]" Def.'s Mot. at 5 (citing 41 U.S.C. § 4712(C)(1) and (2)).

In his opposition, the plaintiff argues that his "claim must proceed . . . because [he] has stated a cause of action [for] wrongful termination reprisal under 41 U[.]S[.]C[.] [§] 4712 for

disclosing violations of rule and regulations substantial and [s]pecific danger to [p]ublic safety."

Pl.'s Opp'n at 11.  The plaintiff asserts that his claim

> is supported with irrefutable documentation of activity protected by public policy in the District of Columbia prohibiting reprisal.  The plaintiff was an employee of the employer, an adverse employment action exists, and a protected conduct was the motivating or substantial factor in the employers' decision to take adverse employment action.

Id.  The plaintiff elaborates that "41 U[.]S[.]C[.] [§] 4712 [p]rohibits reprisal on a federal contract when [an] employee[ ] disclose[s] certain information to qualified personnel [t]hat the employee reasonably believes is substantial and specific danger to public safety or violations of law or rules or regulations on federal contract."  Id.

In its reply to the plaintiff's opposition, the defendant asserts that the "[p]laintiff's opposition . . . [newly] characterizes the Amended Complaint as including a cause of action for 'wrongful termination reprisal under 41 [U.S.C.] [§] 4712[,]'" Def.'s Reply at 3 (second and fifth alteration added), and the defendant goes on to argue that "[i]n regard to the [p]laintiff's claim that he reported a danger to public safety, the conduct he alleges to have reported falls far below the threshold of a 'substantial and specific danger to public health or safety[,]'" id. at 4 (quoting 41 U.S.C. § 4712).  The defendant explains its basis for this position as follows:

> [t]he fact that a security officer drove his car while wearing his weapon or stood on the sidewalk by his car . . . presents no danger at all to public safety let alone a "substantial" one.  Such conduct is also insufficient to support any claim . . . that [the plaintiff] "reasonably believed" that his fellow officer's conduct created substantial safety danger.[8]  Other than [the plaintiff] claiming that his co-worker's conduct occurred during the "George Floyd" protests [ ], neither the [A]mended [C]omplaint nor [his] opposition sets forth any facts or otherwise explains in any way the basis for [his] assertion of the existence of a substantial danger to public safety.

---

8 "The term 'reasonable belief' includes both a subjective and an objective component which means 'an employee must actually believe in the unlawfulness of the employer's actions and that belief must be objectively reasonable[.']  Crain v. National Science Foundation, 687 Fed. App'x 682, 691 (10th Cir. 2017); Kappouta v. Valiant Integrated Services, LLC, 2021 WL 4806437 (S.D. Cal. 2021)."  Def.'s Reply at 4 n.2.

Id. at 4. (internal citations to the record omitted) (footnote in original).

"Notwithstanding the expansion of the 'very narrow' public policy exception, an important limiting principle is that a plaintiff may not seek relief under a theory of wrongful discharge based upon a statute that carries its own remedy for violation."  Lockhart v. Coastal Int'l Sec., Inc., 5 F. Supp. 3d 101, 106 (D.D.C. 2013); see also LeFande v. District of Columbia, 864 F. Supp. 2d 44, 50 (D.D.C. 2012) ("Even where there is a showing of a clearly identifiable policy, the D.C. Court of Appeals has refused to find new exceptions to the doctrine of at-will employment where the legislature has already 'creat[ed] a specific, statutory cause of action to enforce' the public policy at issue." (quoting Carter v. District of Columbia, 980 A.2d 1217, 1225–26 (D.C. 2009))).[9]

---

[9] As discussed in Section III(B)of this Memorandum Opinion, the plaintiff in this case appears to have exhausted his administrative remedies, and therefore has a right to sue the contractor in a de novo action in federal court, see 41 U.S.C. § 4712(c)(2); however, the public policy exception to the at-will employment doctrine only applies in very narrow circumstances, which are not present here.  Notably, a plaintiff cannot assert this exception when claiming wrongful discharge based upon a statute that carries its own remedial scheme.  In other words, a plaintiff can allege that the terminating employer otherwise violated such a statute, including, as here, a whistleblower statute, but the public policy exception to the at-will doctrine, specifically, cannot serve as a basis for relief if the statute has its own remedial scheme.

Another member of this Court has further explained this distinction when dismissing a retaliatory discharge claim as follows:

> [The plaintiff] was an at-will employee and thus, under D.C. law, she could be discharged for any reason.  See Adams v. George W. Cochran & Co., Inc., 597 A.2d 28, 30 (D.C. 1991).  That said, D.C. law recognizes an exception to this rule when a discharge is contrary to public policy.  See, e.g., id. at 34.  According to [the plaintiff], her discharge was contrary to public policy because she was fired in retaliation for reporting her supervisor's sexual harassment . . . . As such, she argues her claim falls within the public policy exception.  But this argument fails as well.  The D.C. Court of Appeals has held that the public policy exception does not apply when a statute provides adequate protection of the public interests sought to be vindicated.

Masson v. Aramark Inc., 310 F. Supp. 3d 128, 130 (D.D.C. 2018) (citing McManus v. MCI Commc'ns Corp., 748 A.2d 949, 957 (D.C. 2000)) (rejecting the position that "a public policy exception to the at-will employment doctrine applies to an alleged statutory violation" in a case involving the District of Columbia Human Rights Act).

Since the plaintiff in Masson had access to statutory remedies protecting against retaliatory discharge under Title VII of the Civil Rights Act of 1964, see 42 U.S.C. § 2000e–3(a), a member of this Court concluded that the "the proper avenue for seeking relief is the statutory one, not the public policy exception to the at-will doctrine."

(continued . . .)

The National Defense Authorization Act ("NDAA"), 41 U.S.C. § 4712, protects federal government contractor employees from "reprisals" for "disclosing" to specified government persons or entities, information that the employee:

> Reasonably believes is evidence of gross mismanagement of a Federal contract or grant, a gross waste of Federal funds, an abuse of authority relating to a Federal contract or grant, a substantial and specific danger to public health or safety, or a violation of law, rule, or regulation related to a Federal contract (including the competition for or negotiation of a contract) or grant.

41 U.S.C. § 4712(a). The statute contains its own remedy to redress the conduct about which the plaintiff complains—i.e., retaliation against federal whistleblowers who properly disclose information regarding "a substantial and specific danger to public health or safety . . . ." See id. § 4712(a). Pursuant to the statute, "[a]n employee who files [ ] a report [regarding misconduct related to a federal contract] and who then experiences retaliation may, after exhausting administrative remedies, sue the contractor." Scarlett v. Nat'l Sci. Found. Off. of Inspector Gen., No. 22-cv-188 (BAH), 2022 WL 17830227, at *6 (D.D.C. Dec. 21, 2022) (citing 41 U.S.C. § 4712 (c)(2)).

41 U.S.C. § 4712 makes the following administrative process available to a complainant alleging reprisal:

> A person [alleging] a reprisal prohibited by [41 U.S.C. § 4712(a)] may submit a complaint to the Inspector General of the executive agency involved. Unless the Inspector General determines that the complaint is frivolous, fails to allege a violation of the prohibition in subsection (a), or has previously been addressed in another . . . judicial or administrative proceeding initiated by the complainant, the Inspector General shall investigate the complaint and, upon completion of such investigation, submit a report of the findings of the investigation to the person, the [entity] concerned, and the head of the agency.

---

(. . . continued)

Masson, 310 F. Supp. 3d at 130 (citing Hoskins v. Howard Univ., 839 F.Supp.2d 268, 281 (D.D.C. 2012) (concluding that the public policy exception did not apply where Title VII and the D.C. Human Rights Act both provided adequate statutory remedial schemes for addressing retaliatory discharge).

41 U.S.C. § 4712(b)(1).  Absent an extension of time—to which the complainant must agree—as outlined in 41 U.S.C. § 4712(b)(2)(B), "the Inspector General shall make a determination" regarding the complaint "within 180 days after receiving the complaint."  Id. § 4712(b)(2)(A).[10]

The statute also establishes the remedies available to a complainant, once the Inspector General has completed its report, and if the head of the executive agency involved subsequently "determine[s that] there is sufficient basis to conclude that the [entity] concerned has subjected the complainant to a [prohibited] reprisal," Id. §4712(c)(1).  The statute directs the head of the agency to take any, or multiple, of the following actions:

(A) Order [offending entity] to take affirmative action to abate the reprisal.

(B) Order [the offending entity] to reinstate the person to the position that the person held before the reprisal, together with compensatory damages (including back pay), employment benefits, and other terms and conditions of employment that would apply to the person in that position if the reprisal had not been taken.

(C) Order [the offending entity] to pay the complainant an amount equal to the aggregate amount of all costs and expenses (including attorneys' fees and expert witnesses' fees) that were reasonably incurred by the complainant for, or in connection with, bringing the complaint regarding the reprisal, as determined by the head of the executive agency.

(D) Consider disciplinary or corrective action against any official of the executive agency, if appropriate.

Id. § 4712(c)(1).  Here, the plaintiff claims that he has exhausted the administrative remedies available to him.  Pursuant to the statute,

[i]f the head of an executive agency issues an order denying relief under paragraph (1) or has not issued an order within 210 days after the submission of a complaint under subsection (b), or in the case of an extension of time under paragraph (b)(2)(B), not later than 30 days after the expiration of the extension of

---

[10] The statute permits extensions of time for the investigation of complaints, but such extensions cannot exceed 360 days: "If the Inspector General is unable to complete an investigation in time to submit a report within the 180-day period specified in subparagraph (A) and the person submitting the complaint agrees to an extension of time, the Inspector General shall submit a report . . . within such additional period of time, up to 180 days, as shall be agreed upon between the Inspector General and the person submitting the complaint." 41 U.S.C. § 4712(b)(2)(B).  The timeline for exhaustion of remedies is further detailed in 41 U.S.C. § 4712(c)(2)(b).

time, and there is no showing that such delay is due to the bad faith of the complainant, the complainant shall be deemed to have exhausted all administrative remedies with respect to the complaint, and the complainant may bring a de novo action at law or equity against the contractor, subcontractor, grantee, subgrantee, or personal services contractor to seek compensatory damages and other relief available under this section in the appropriate district court of the United States, which shall have jurisdiction over such an action without regard to the amount in controversy.

Id. § 4712(c)(2)(b).  Essentially, the executive agency has a maximum of between 210 days under subsection (b) and 390 days under paragraph (b)(2)(B) to complete its administrative review of a complaint.

Here, the alleged violation—the termination of the plaintiff's employment by the defendant—took place on July 28, 2020, see Am. Compl. at 2, and according to documentation that the plaintiff appended to his Amended Complaint, the plaintiff filed his administrative complaint with the Department of Homeland Security, Office of the Inspector General ("DHS OIG"), on May 3, 2022, see id., Ex. 1 (E-mail Regarding DHS OIG Matter ("DHS OIG E-mail")) at 3, ECF No. 20-1.  Therefore, the plaintiff filed his administrative complaint within the statute's time limitation of "no more than three years after the date on which the alleged reprisal took place," 41 U.S.C. § 4712(b)(4).  The DHS OIG completed its review of the plaintiff's complaint on June 14, 2023—over 390 days later.  See Am. Compl., Ex. 1 (DHS OIG E-mail) at 1.  Therefore, the plaintiff's administrative remedies had been exhausted by the time he received a response to his administrative complaint, prompting him to initiate this lawsuit.

Because "the public-policy exception may not be invoked on the basis of a statute that carries its own remedy[,]" Jones v. D.C. Water & Sewer Auth., 963 F. Supp. 2d 17, 22 (D.D.C. 2013), the Court concludes that the plaintiff's claim for wrongful discharge based on 41 U.S.C. § 4712 falls outside the purview of the limited public policy exception, see Kassem, 513 F. 3d at 254 (stating that "[t]he public policy exception was [ ] limited in Nolting v. National Capital

Group, Inc., in which the D.C. Court of Appeals held the exception unavailable 'where the very statute creating the relied-upon public policy already contains a specific and significant remedy for the party aggrieved by its violation'" (quoting 621 A.2d 1387, 1390 (D.C. 1993)). Ultimately, the plaintiff's claim falls outside the purview of the limited public policy exception because the "very statute creating the relied-upon public policy"—in this case, 41 U.S.C. § 4712—"already contains a specific and significant remedy for the party aggrieved by its violation," see Nolting, 621 A.2d at 1390; therefore, the plaintiff's claim against the defendant cannot support a wrongful discharge claim based on 41 U.S.C. § 4712.[11]

### 2. Whether the Plaintiff Has Established a Wrongful Termination Claim Based on the Federal Protective Service Statement of Work

Second, the plaintiff argues that he has established a "viable claim for wrongful termination . . . based on . . . Federal Protective Service rules and regulations arising out of the Federal Protective Service statement of work for Protective Service [O]fficers (PSO) SMART Book[,]" Am. Compl. at 7, a copy of which the plaintiff has attached to his opposition, see Pl.'s Opp'n, Ex. 4 (Department of Homeland Security Federal Protective Service Statement of Work for Protective Security Officer Services ("Statement of Work")) at 1, ECF No. 22-4.  In its motion to dismiss, the defendant argues that the Smart Book is "neither a D.C. law, ordinance[,] or regulation and cannot serve as the basis for the public policy of the District of Columbia protecting safety whistleblowers."  Def.'s Mot. at 6.  Specifically, the defendant contends that, "[f]irst, the Federal Protective Services Statement of Work cited by [the p]laintiff is not a law. Second, [the defendant argues that] even assuming, arguendo, that the cited provisions . . . are 'regulations' or 'rules[,]' none of those provisions ban the conduct reported by [the p]laintiff." Def.'s Reply at 5.  Finally, the defendant argues that "the asserted violations of the Statement of

---

[11] 41 U.S.C. § 4712 establishes the remedies available in subsections (c)(1) and (c)(2)(b), which are quoted above.

Work by [the p]laintiff's co-worker fall short of the type of serious violation of law, regulation[,] or rule related to a federal contract which implicates the protections provided by 41 U.S.C[.] § 4712." Id.

Recognition of a public policy exception must be "firmly anchored either in the Constitution or in a statute or regulation which clearly reflects the particular 'public policy' being relied upon." Carl, 702 A.2d at 162. "[A]n employer's violation of mere internal policies cannot support" the public-policy exception. Jones, 963 F. Supp. 2d at 21; see also Brown v. Child.'s Nat'l Med. Ctr., 773 F. Supp. 2d 125, 139 (D.D.C. 2011) (refusing to recognize the public policy exception where the only violation was of "[a private employer's] internal personnel policies regarding employee discipline, grievances, equal employment opportunity, harassment, and retaliation"); Chisholm v. District of Columbia, 666 F. Supp. 2d 96, 117 (D.D.C. 2009) (Walton, J.) (rejecting the argument that the District of Columbia Courts' Comprehensive Policies were a source of public policy because they were not a "fundamental public polic[y] of the state").

Here, the Department of Homeland Security, Federal Protective Service, Statement of Work for Protective Security Officer Services is not a constitutional provision, statute, or regulation; instead, it is an internal personnel policy resource. Therefore, because "internal personnel policies are insufficient on their own" to support the public policy exception, Jones, 963 F. Supp. 2d at 21, the Court concludes that the plaintiff cannot rely on the "SMART Book" as support for his wrongful discharge claim.

### 3. Whether the Plaintiff Has Adequately Pleaded a Wrongful Termination Claim Based on D.C. Code § 22-4504.02

Third, as support for his wrongful termination claim, the plaintiff references a District of

Columbia statute regarding the lawful transportation of firearms, see Am. Compl. at 5, which

states in relevant part:

(a) A person may not transport a firearm unless the person:

(1) Is not otherwise prohibited by law from transporting, shipping, or receiving the firearm;
(2) Is transporting the firearm for a lawful purpose from a place where the person may lawfully possess and carry the firearm to another place where the person may lawfully possess and carry the firearm; and
(3) Transports the firearm in accordance with this section.

(b)(1) If the transportation of the firearm is by a vehicle, the firearm shall be unloaded, and neither the firearm nor any ammunition being transported shall be readily accessible or directly accessible from the passenger compartment of the transporting vehicle.

(2) If the transporting vehicle does not have a compartment separate from the driver's compartment, the firearm or ammunition shall be contained in a locked container other than the glove compartment or console, and the firearm shall be unloaded.

(c) If the transportation of the firearm is in a manner other than in a vehicle, the firearm shall be:

(1) Unloaded;
(2) Inside a locked container; and
(3) Separate from ammunition.

D.C. Code § 22-4504.02. Although the plaintiff asserts that "[t]he Federal Government[']s

statement of work for [Protective Service Officers] does not encourage any violation of [the]

District of Columbia's firearm regulation act[,]" Am. Compl. at 6, he does not explicitly explain

how this statute supports his wrongful discharge claim, see generally id.

In its motion to dismiss, the defendant argues that "[n]othing in th[is] regulation

addresses the movements of an armed, federal contract, security officer while on duty and the

[A]mended [C]omplaint makes no claim that the complained-of or reported conduct of [the p]laintiff's fellow guard involved the transportation of a firearm from one location to another." Def.'s Mot. at 6. The defendant asserts that, "[s]imply put, the ordinance is not designed to address the alleged 'potential danger to public safety' which was the subject of [the p]laintiff's asserted reporting." Id.

As previously noted, "[t]o state a claim for wrongful termination, plaintiff employees must show that a claimed public policy is 'clearly reflect[ed]' and 'firmly anchored in either the Constitution or in a statute or regulation[,]' and 'there must be a close fit between the policy thus declared and the conduct at issue in the allegedly wrongful termination[.]'" Alibalogun v. First Coast Sec. Sols., Inc., 67 F. Supp. 3d 211, 217 (D.D.C. 2014) (internal citation omitted). Here, the plaintiff alleges that he reported a "co-worker [who] was in violation of the rules and regulations of the Federal Protective Service[,] Department of Homeland Security[,] by being armed with assigned weapons on public street[s] and traveling with the weapon to move his personal vehicle from one city block to another." Am. Compl. at 4. However, the plaintiff does not identify a public policy that is clearly reflected and firmly anchored in D.C. Code § 22-4504.02, and he does not allege facts sufficient to support a conclusion that there is a "close fit" between such public policy and the conduct at issue that resulted in the alleged wrongful termination. Alibalogun, 67 F. Supp. 3d at 217. Moreover, the plaintiff does not indicate whether D.C. Code § 22 4504.02 specifically covers armed security guards.

Although pro se complaints are held to a more lenient standard than are lawyer-drafted complaints, "a court need not make or accept inferences that are unsupported by allegations of fact" when ruling on a motion to dismiss. Canen v. Wells Fargo Bank, 118 F. Supp. 3d 164, 167 (D.D.C. 2015). Thus, to the extent the plaintiff relies on D.C. Code § 22-4504.02 to support his

wrongful discharge claim, the Court concludes that the plaintiff has not alleged sufficient facts to demonstrate "a wrongful termination cause of action [that is] . . . 'firmly anchored in either the Constitution or in a statute or regulation' which clearly reflects the particular public policy being relied upon." Bowie, 433 F. Supp. 2d at 30.

Accordingly, the Court concludes that the plaintiff has failed to state a wrongful discharge claim under District of Columbia law, because he has not shown how the alleged facts in any way violate the statute he cites. See Davis, 525 F. Supp. 2d at 102 (concluding that the "[p]laintiff's wrongful discharge claim [wa]s deficient [ ] because it d[id] not identify any public policy purportedly violated by his termination[]"); Taylor, 200 F. Supp. 3d at 202 ("In cases in which the alleged wrongful discharge claim survived a motion to dismiss, the plaintiff specifically identified the statute or regulation underlying the wrongful discharge claim."); Harris v. D.C. Water & Sewer Auth., 195 F. Supp. 3d 100, 106 (D.D.C. 2016) ("To state a claim for wrongful discharge in violation of public policy, [ ] the plaintiff must point to some identifiable policy that has been officially declared in a statute or municipal regulation, or in the Constitution, and [demonstrate] a close fit between the policy and the conduct at issue in the allegedly wrongful termination.") (internal quotation marks omitted).

**B.      Whether the Plaintiff Has Stated a Claim Under 41 U.S.C. § 4712**

In his Amended Complaint, the plaintiff cites 41 U.S.C. § 4712 "as [an] applicable statute sufficient to withstand" the defendant's motion to dismiss. Am. Compl. at 1.  The defendant contends that, "to the extent the Amended Complaint is read to plead a cause of action for violation of 41 U.S.C[.] § 4712, it fails to state a cause of action upon which relief can be granted." Def.'s Mot. at 8.  More specifically, the defendant argues that "the Amended Complaint fails to allege facts sufficient to support any belief . . . that the activity reported by

[the p]laintiff presented a 'substantial and specific danger' to public safety." Id. at 9. Additionally, the defendant argues that the Amended Complaint does not "attempt to describe how, in any way, a[n] armed security guard leaving the worksite for a period of time or standing outside the worksite on the sidewalk by his car . . . could constitute a specific or substantial danger to public safety[,]" except for the plaintiff's allegation that the "activity took place during the 'George Floyd riots[.]'" Id.

In his opposition, the plaintiff argues that he "has stated a cause of action [for] wrongful termination reprisal under 41 U[.]S[.]C[.] [§] 4712 for disclosing violations of rule and regulations substantial and [s]pecific danger to [p]ublic safety[]" to his superiors. Pl.'s Opp'n at 11. He adds that "[t]he violation . . . during the George Floyd riots in Washington[,] D[.C.,] posed a substantial danger to public safety because rioters were attacking uniformed personnel[.]" Id. at 12. In its reply, the defendant asserts that the Amended Complaint "fall[s] short of stating [a] cause of action for violation of the statute" because (1) "the Federal Protective Services Statement of Work cited by [the p]laintiff is not a law[,]" and (2) "even assuming, arguendo, that the cited provisions of the Statement of Work . . . are 'regulations' or 'rules,' none of those provisions ban the conduct reported by [the p]laintiff." Def.'s Reply at 5.[12] Moreover, the defendant argues that in "cases interpreting whistleblower protection statutes similar to 41 U.S.C[.] §[ ]4712, courts have held that not all reported violations of rules or regulations constitute protected conduct." Id.

---

[12] The defendant notes that "Section 1.5.1 merely requires familiarity with the FPS 'Smart Book'. Section 4.3.1 merely requires that the employees keep their firearms license in their possession. [And,] Section 4.3.2 authorizes employees to travel with their firearms." Id.

41 U.S.C. § 4712 provides whistleblower protections for employees of Federal contractors, subcontractors, grantees, and subgrantees for claims of reprisal against their employers.  See 41 U.S.C. § 4712(a)(1).  Specifically, 41 U.S.C. § 4712(a)(1) states:

> An employee of a contractor, subcontractor, grantee, or subgrantee or personal services contractor may not be discharged, demoted, or otherwise discriminated against as a reprisal for disclosing to a person or body described in paragraph (2)[13] <u>information that the employee reasonably believes is evidence of</u> gross mismanagement of a Federal contract or grant, a gross waste of Federal funds, an abuse of authority relating to a Federal contract or grant, <u>a substantial and specific danger to public health or safety, or a violation of law, rule, or regulation related to a Federal contract</u> (including the competition for or negotiation of a contract) or grant.

Id. (emphasis added).

Prior to filing suit for a violation of 41 U.S.C. § 4712, a plaintiff must first "submit a complaint to the Inspector General of the executive agency involved."  Id. 41 U.S.C. § 4712(b)(1).  The Inspector General, absent a determination that "the complaint is frivolous, fails to allege a violation of [41 U.S.C. § 4712](a), or has previously been addressed in another Federal or State judicial or administrative proceeding initiated by the complainant, . . . shall investigate the complaint" and thereafter "submit a report of the findings of the investigation" to, inter alia, the "head of the agency."  Id. § 4712(b)(1).  The agency head is then required to "determine whether there is sufficient basis to conclude that the contractor, subcontractor,

---

[13] The persons and bodies described in paragraph (2) include:

> (A) A Member of Congress or a representative of a committee of Congress[;]
> (B) An Inspector General[;]
> (C) The Government Accountability Office[;]
> (D) A Federal employee responsible for contract or grant oversight or management at the relevant agency[;]
> (E) An authorized official of the Department of Justice or other law enforcement agency[;]
> (F) A court or grant jury[; and]
> (G) A management official or other employee of the contractor, subcontractor, grantee, or subgrantee who has the responsibility to investigate, discover, or address misconduct.

Id. 41 U.S.C. § 4712(a)(2).

grantee, or subgrantee concerned has subjected the complainant to a reprisal prohibited by [41

U.S.C. § 4712](a) and shall either issue an order denying relief" or take specified remedial

action.  Id. § 4712(c)(1).

> With respect to the exhaustion of remedies, 41 U.S.C. § 4712 states:
>
> If the head of an executive agency issues an order denying relief under [41 U.S.C. § 4712(c)(1)] or has not issued an order within 210 days after the submission of a complaint under [41 U.S.C. § 4712(b)], or in the case of an extension of time under [41 U.S.C. § 4712(b)(2)(B)], not less than 30 days after the expiration of the extension of time, and there is no showing that such delay is due to the bad faith of the complainant, the complainant shall be deemed to have exhausted all administrative remedies with respect to the complaint, and the complainant may bring a de novo action . . . in the appropriate district court of the United States[.]

Id. § 4712(c)(2).

Here, the plaintiff asserts that he has exhausted his administrative remedies.  See Am.

Compl. at 2.  The Amended Complaint states that the plaintiff filed a complaint of retaliatory

discharge with the "[O]ffice of Inspector General" on February 7, 2023, id., and Exhibit 1 of the

Amended Complaint contains copies of e-mail communications between the plaintiff and

Halcyon Apy, Investigative Counsel for the Department of Homeland Security, Office of

Inspector General, Whistleblower Protection Division, advising the plaintiff that his complaint

did not raise a prima facie allegation of reprisal under 41 § U.S.C. 4712, see id., Ex. 1 (DHS OIG

E-mail) at 1–4.  However, the defendant argues that, even "assuming that [the p]laintiff properly

filed an agency complaint of a violation of 41 U.S.C. §[ ]4712 and thereafter exhausted his

administrative remedies, the Amended Complaint fails to satisfy the pleading requirements of

Iqbal and Twombly."  Def.'s Mot. at 9.

To state a 41 U.S.C. § 4712(a) claim, a plaintiff must plausibly allege "that (1) [he or] she

was an employee of a government contractor, (2) [he or] she disclosed information that [he or]

she reasonably believed was [a substantial and specific danger to public health or safety or]

evidence of a rule violation related to a federal contract to the required person, and (3) [his or] her disclosure was a contributing factor in the action taken against [him or] her." Sargent v. Pompeo, No. 19-cv-620 (CJN), 2020 WL 5505361, at *14 (D.D.C. Sept. 11, 2020) (internal citation and quotation marks omitted).

The defendant argues that the plaintiff has failed to satisfy the second requirement for stating a 41 U.S.C. § 4712(a) claim, see id., i.e., the requirement that the employee "disclosed information that [he] reasonably believed was [a substantial and specific danger to public health or safety or] evidence of a rule violation related to a federal contract to the required person," Sargent, 2020 WL 5505361, at *14.  In regards to this element of his § 4712(a) claim, the plaintiff's Amended Complaint merely alleges the following facts: (1) "[a] Protective Security Officer (P.S.O[.]) was observed with his duty weapon on the street, a violation of the Department of Homeland Security[,] Federal Protective Service[,] rules and regulations," Am. Compl. at 2; (2) "[the p]laintiff reported and documented potential danger to public safety during the George Floyd riots in Washington[,] D[.C.,] [namely that the p]laintiff observed a co-worker armed with assigned weapon driving off the premises and later returning approximately thirty minutes later[,]" id. at 3; and (3) that "[u]pon returning to work, [the p]laintiff observed the co-worker on the street with his assigned weapon whilst a pedestrian was casually walking by the firearm side[ of the co-worker's body,]" id.  In sum, "[t]he aforementioned activities of the co[-]worker is what [the p]laintiff described as 'taking the weapon beyond the scope of its intended jurisdiction[.]'"  Id.

"The case law interpreting the anti-reprisal provision contained in the NDAA is slim[.]" Fuerst v. Hous. Auth. of City of Atlanta, No. 20-cv-2027 (MHC), 2020 WL 8299763, at *4 (N.D. Ga. Dec. 28, 2020).  Nonetheless, the Court concludes that these factual allegations, even

"accepted as true," do not "'state a claim to relief that is plausible on its face[,]'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 570), because the allegations do not "allow[] the court to draw [a] reasonable inference that the defendant is liable[,]" id. (citing Twombly, 550 U.S. at 556), for reprisal due to the plaintiff's disclosure of information that he reasonably believed was evidence of a substantial and specific danger to public health or safety, see 41 U.S.C. § 4712.

Regarding whether the plaintiff has sufficiently alleged that he disclosed "information that [he] reasonably believes is evidence of . . . a violation of law, rule, or regulation related to a federal contract[,]" 41 U.S.C. § 4712(a)(1), the plaintiff alleges the following:

> The Federal Protective Service (FPS) requires that all employees are assigned a post, and employees are to maintain the duties of any post assigned. [The p]laintiff documented the violations from his assigned post. The co-worker in violation was not on his assigned post, which was the loading dock post (3) located at the interior of the building. The Federal Protective Service (FPS) did not assign a post on public street. Protective Security Officers may travel with assigned firearm to and from their post and while physically working on post. Protective Security Officers (PSO) are authorized to travel to and from duty stations armed with assigned duty weapons unless prohibited by state and local laws. The co-worker was in violation of the rules and regulations of the Federal Protective Service[,] Department of Homeland Security[,] by being armed with assigned weapons on public street and traveling with the weapon to move his personal vehicle from one city block to another.

Am. Compl. at 4. The plaintiff cites Sections 1.5.1, 4.3.1, and 4.3.2 of the Federal Protective Service Statement of Work in support of his argument. See id. at 3–4.

Section 1.5.1 of the Federal Protective Service Statement of Work states that "[t]he Contractor shall ensure all [Protective Service Officers] read and understand the content of the FPS PSO SMART Book[, Attachment 1,] prior to providing security services under this contract." Fed. Protective Serv. Statement of Work § 1.5.1. Additionally, Section 4.3.1 states:

> PSOs shall carry original firearms license/permits in their possession at all times, unless they have applied for a new license/permit. The firearm license/permit

shall be in the possession when traveling with a firearm to/from their post and while they are physically working on post.

PSOs who do not have a valid firearm license/permit in their possession or cannot produce one, when requested, shall be removed from post immediately. Contractor will be notified immediately and a request for a remedy will be initiated. PSO may return to post once a valid firearm/permit is produced. Post will be considered "open" during the period of non-compliance.

Fed. Protective Serv. Statement of Work § 4.3.1. And Section 4.3.2 states:

PSOs are authorized to travel to and from duty stations armed, with assigned duty weapon(s) unless prohibited by state and local law. It is the contractor's responsibility for getting the weapons to the PSO's work site if the transporting of weapons is prohibited by state and/or local law.

Fed. Protective Serv. Statement of Work § 4.3.2.

The Court, as it must in a case brought by a pro se plaintiff, consider as true not only the facts as pled in the plaintiff's Complaint, but also the facts alleged in his Amended Complaint and his Oppositions to the defendants' Motions to Dismiss. See Sparrow v. United Air Lines, Inc., 216 F.3d 1111, 1113–14 (D.C. Cir. 2000); Brown, 789 F.3d at 152 (courts should consider "the facts alleged in all of [a pro se plaintiff's] pleadings" when evaluating a motion to dismiss pursuant to Rule 12(b)(6)); Webb v. U.S. Veterans Initiative, 993 F.3d 970, 973 (D.C. Cir. 2021) ("In other words, [the plaintiff's] filings following his 'amended' complaint reflect his intent to supplement, rather than replace, his claims in the original complaint. Considering all of this pro se plaintiff's filings together, we find that his allegations . . . clear the motion to dismiss bar."). Therefore, the Court takes into consideration the plaintiff's allegation in his opposition that "[t]he violation of rules and regulations on the federal contract during the George Floyd riots in Washington[,] D[.C.,] posed a substantial danger to public safety because rioters were attacking uniformed personnel as they sought to gain access to buildings while looting surrounding retail

stores." Pl.'s Opp'n at 12. Nevertheless, for the reasons already articulated in this Section, the Court concludes that this allegation is insufficient to survive the defendant's motion to dismiss.

Therefore, the Court concludes that the plaintiff has failed to state a claim under 41 U.S.C. § 4712 for reprisal for disclosing "information that [he] reasonably believes is evidence of . . . a substantial and specific danger to public health or safety[.]" 41 U.S.C. § 4712(a)(1). And, even if the plaintiff's factual allegations, accepted as true, established a violation of the cited provisions of the Federal Protective Service Statement of Work, that finding is not relevant to the Court's conclusion here, as these provisions comprise internal personnel policies, rather than the kind of law, rule, or regulation required to support a claim of wrongful discharge under 41 U.S.C. § 4712. See Jones, 963 F. Supp. 2d at 21 (noting that "internal personnel policies are insufficient on their own" to support the public policy exception); Chisholm, 666 F. Supp. 2d at 117 ("The public policy exception applies to a narrow set of circumstances that includes situations where an employee suffers an adverse action for refusing to break the law or for following the law to the detriment of her employer."); Turner v. Fed. Express Corp., 539 F. Supp. 2d 404, 411 (D.D.C.2008) (recognizing the exception for an at-will employee's refusal to break the law); Freas v. Archer Servs., Inc., 716 A.2d 998 (D.C. 1998) (extending the exception to an at-will employee terminated for reporting an employer's illegal conduct to the authorities); Carl, 702 A.2d at 159 (extending the exception to an at-will employee who was terminated for exercising her statutory right to testify before the District of Columbia Council in opposition to tort reform legislation); Washington v. Guest Servs., Inc., 718 A.2d 1071, 1072 (D.C. 1998) (concluding that the plaintiff's sworn allegation that she was discharged in retaliation for attempting to ensure a colleague's compliance with District of Columbia health and food regulations was sufficient to preclude entry of summary judgment because such regulations "are

expressions of a clear public policy proscribing, in the interest of public health, the preparation, service or sale of adulterated or contaminated food."); Adams, 597 A.2d at 30 (establishing the public policy exception and applying it to an at-will employee terminated for refusing to break the law at an employer's direction).  Thus, the Court concludes that the plaintiff has failed to state a claim under 41 U.S.C. § 4712 for reprisal for disclosing "information that [he] reasonably believes is evidence of . . .  a violation of law, rule, or regulation related to a federal contract." 41 U.S.C. § 4712(a)(1).

### IV.    CONCLUSION

For the foregoing reasons, the Court concludes that it must grant the defendant's motion to dismiss.

**SO ORDERED** this 28th day of March, 2025.[14]

REGGIE B. WALTON
United States District Judge

---

[14] The Court will contemporaneously issue an Order consistent with this Memorandum Opinion.

27